IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM G. CREASY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | NO. 3:22-cv-00035 |
| ) | |
| MARTIN FINK, Warden, ) | JUDGE RICHARDSON |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

William Creasy, an inmate at the Trousdale Turner Correctional Complex (TTCC) in Hartsville, Tennessee, filed a pro se habeas corpus petition under 28 U.S.C. § 2254 on January 19, 2022 (Doc. No. 1), which he amended on March 8, 2022. (Doc. No. 7.) By Order entered March 10, 2022, the Court found that the Amended Petition contained at least one colorable claim and directed the State to respond within 30 days. (Doc. No. 8.)

On March 28, the Court received two filings from Petitioner: a Motion for a Temporary Restraining Order (TRO) and a Preliminary Injunction (Doc. No. 9) and a combined Memorandum and Declaration in support of the Motion (Doc. No. 10). For the reasons given below, Petitioner's Motion for a TRO and a Preliminary Injunction (Doc. No. 9) is **DENIED**.

## BACKGROUND

In this action, Petitioner challenges the constitutionality of his February 13, 2020 conviction and sentence for two crimes to which he pled guilty. (Doc. No. 7 at 1.) For those crimes (theft over $10,000 and evading arrest), the Amended Petition recites that respective sentences of "15 years at 60%" and "12 years at 60%" were imposed, to run concurrently with prior sentences. (*Id.*) Petitioner claims that he was deprived of due process because his guilty plea was effectively

coerced under threat of prosecution of his wife and brother, that he received ineffective assistance of counsel, and that he was subjected to cruel and unusual punishment. (*Id.* at 5–8.) He asks the Court to void his convictions and sentence and to order his immediate release from prison. (*Id.* at 15.)

## MOTION FOR TRO AND PRELIMINARY INJUNCTION

### A. Petitioner's Filings

In his TRO Motion, Petitioner seeks emergency injunctive relief "[b]ecause of the grounds listed in [the] Petition and the statement of facts that back them up," and asks to be released from custody in order to avoid "suffering irreparable harm and future violation of [his] Constitutional rights" while waiting for "the final disposition of the case." (Doc. No. 9 at 1.) He specifically refers the Court to his Amended Petition and other pleadings in support thereof "as a declaration of facts," and states that he is "in fear for [his] life . . . at the worst prison in Tennessee." (*Id.* at 2.) He therefore seeks his "freedom [by] way of GPS ankle monitor and return to [his] home[.]" (*Id.*)

In his supporting Memorandum, Petitioner argues that, because he is likely to win habeas relief in this case, it would be a violation of his Eighth Amendment right to be free from cruel and unusual punishment if he were required to serve another day in prison after notifying the Court of the circumstances that led to his incarceration. (Doc. No. 10 at 1.) He claims that the balance of hardships favors injunctive relief, that he is likely to succeed on the merits, and that he will be fully vindicated when all audio and video footage is reviewed. (*Id.* at 1–2.)

In his supporting Declaration, Petitioner avers that his sentence is illegal, and that when he asked to see his discovery, his "wife and brother were arrested and threatened with prosecution unless [he] accept[ed] the plea agreement offered on Feb-13-2020." (*Id.* at 3.) Petitioner states that one year earlier, on February 7, 2019, he was brought to the courtroom of Sumner County Judge

2

Dee Gay "only after everyone ha[d] left" and was denied his discovery and his constitutional rights. (*Id.* at 3–4.) Judge Gay then told Petitioner "[t]his is his courtroom and I'll get what he says I'll get, when he says so," following which Judge Gay ordered his bailiff to remove Petitioner from the courtroom. (*Id.* at 4.) Petitioner claims that the transcript of this hearing before Judge Gay is fraudulent. (*Id.*) He states that he has "never seen one piece of evidence a crime [he has] been convicted of was ever committed," but has found out that Judge Gay is the chair of the Tennessee Board of Judicial Conduct (TBJC), and that the TBJC "looks out" for the corporation that operates TTCC (CoreCivic, Inc.), and vice versa. (*Id.* at 4.) Petitioner reiterates his demand for "immediate release from illegal confinement by TRO and . . . a[n] emergency hearing be set for preliminary injunction," and asks that he be free to "go home pending final disposition of all claims." (*Id.* at 5.) He states that an officer at TTCC, Captain Porter, began verbally harassing him around Christmas of 2021 and ultimately took his television. (*Id.*) He asserts that he fears for his life and does not feel safe, though he is not afraid of other inmates. (*Id.*) He concludes his Declaration with the following summary of his concerns:

> I'm a[n] unaffiliated white guy in the worst pod in the worst prison. My points are high and they got me as having escapes on my record and I've never even tr[i]ed [to] escape but they won't fix it. … I've been treated unfairly and I'm uncomfortable here and I wouldn't doubt Dee Gay would[ ] send someone up here to kill me.
>
> I'll wear a[n] ankle monitor whatever but, I'm innocent and so far it's been 3 years and I've never seen nothing to even make me think a crime was committed. Please order TRO and my release pending outcome.

(*Id.* at 6.)

### B. Analysis

In determining whether to issue a temporary or preliminary injunctive order under Federal Rule of Civil Procedure 65, a district court ordinarily weighs the following four factors: (1) the

3

movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Wilson v. Williams*, 961 F.3d 829, 836 (6th Cir. 2020) (quoting *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)); *see Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of whether the injunctive relief sought is a temporary restraining order or a preliminary injunction). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted).[1]

This multi-factor inquiry is described as a balancing test in *Jones* and other cases. *See*, *e.g.*, *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). And it is indeed a balancing test inasmuch as district courts weigh the strength of the four factors against one another. The balance of hardships test, however, does not eliminate the irreparable harm requirement. Even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." *Friendship Materials*, 679 F.2d at 105, *cited in Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378, 385 (6th Cir. 2020). That factor is indispensable. If the plaintiff isn't facing imminent and irreparable injury, there is no need to grant relief now as opposed to at the end of the lawsuit. *See Friendship Materials*, 679 F.2d at 103. That is why the Sixth Circuit has held that a district court abuses its discretion "when it grants a preliminary injunction without making specific findings of irreparable injury[.]" *Bankers Life & Cas. Co. v. McDaniel*, No. 3:21-cv-00247, 2021 WL 1165974, at *3 (M.D. Tenn. Mar. 26, 2021) (quoting *Friendship Materials*,

---

[1] As set forth immediately below, the first factor actually *is* a prerequisite (as well as a factor to be balanced).

4

679 F.2d at 105). Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory for a TRO to be issued. *Id.*; *D.T. v. Sumner Cnty. Schools*, 942 F.3d 324, 326-27 (6th Cir. 2019).

Here, although Petitioner frames his Motion as one seeking both emergency and preliminary injunctive relief under Rule 65—pursuant to which the Court must analyze the TRO request by assessing Petitioner's showing of "immediate and irreparable injury," Fed. R. Civ. P. 65(b)(1)(A)—his Motion largely adverts to the facts alleged in his Amended Petition, such that the "claim of irreparable harm [made in his Motion] merely begs the question of whether he has suffered a constitutional deprivation." *Meneses v. Jennings*, No. 21-CV-07193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) ("While there is no doubt that being detained without due process would be an irreparable harm, Cristobal simply assumes a deprivation to assert the resulting harm. That will not do."). Aside from the harm resulting from the fact of Petitioner's incarceration for two years (and counting) *if* the unconstitutionality of his conviction is assumed, his filings do not otherwise demonstrate that he is under any legitimate threat of imminent, irreparable harm from Captain Porter, Judge Gay, or anyone else. "A temporary restraining order is an extraordinary remedy that generally is reserved for emergent situations in which a party may suffer irreparable harm during the time required to give notice to the opposite party or where notice itself may precipitate the harm." *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006). Having been imprisoned for two years already, "[c]ontinued detention during the pendency of Petitioner's habeas petition . . . does not demonstrate that the harm is 'certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Abi v. Barr*, Civ. No. 19-1033 (PAM/TNL), 2019 WL 2463036, at *2 (D. Minn. June 13, 2019) (quoting *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011)). Furthermore,

5

insofar as Petitioner seeks to preliminarily enjoin the State from continuing to incarcerate him, "[a] preliminary injunction is also inappropriate where there is an adequate remedy at law, and here that remedy is the petition for writ of habeas corpus"; accordingly, analysis at this early stage of Petitioner's likelihood of success on the merits is both premature and unnecessary. *Id.* Petitioner is not entitled to relief under Rule 65.

Nonetheless, the Court takes guidance from another court's consideration of a similar matter in a similar posture. As found by the court in *Rowell v. Palmer*, a habeas petitioner's motion for release from prison pending the disposition of his habeas corpus petition, if invoking the standard for obtaining preliminary injunctive relief, may properly be construed as "a request for enlargement on bail pending resolution of the petition," to be "evaluate[d] . . . under the applicable standard for that type of motion rather than the preliminary-injunction standard." *Rowell*, No. 3:10-CV-00098-LRH, 2011 WL 3502371, at *1 (D. Nev. Aug. 9, 2011). Petitioner's request for his "freedom [by] way of GPS ankle monitor and return to [his] home" (Doc. No. 9 at 2) thus supports construing his TRO motion as a motion seeking release on bond.

As Judge Crenshaw explained in a recent opinion,

> A federal district court has "inherent authority" to grant bond to a habeas petitioner while his petition is under review. *Nash v. Eberlin*, 437 F.3d 519, 526, n.10 (6th Cir. 2006). But that authority is narrow. "Since a habeas petitioner is appealing a presumptively valid state court conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case." *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). Before and during trial, the accused enjoys a presumption of innocence, and bail is normally granted. *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir. 1972). However, the presumption fades upon conviction, with the State acquiring a substantial interest in executing its judgment. *Id.* This combination of factors dictates a "formidable barrier" for prisoners seeking interim release while they pursue their collateral remedies. *Id.*

> "In order to receive bail pending a decision on the merits, prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail]

6

> exceptional and deserving of special treatment in the interests of justice.'" *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). Even where the Court concludes that a petition raises a substantial question of law, "[m]erely to find that there is a substantial question is far from enough." *Lee*, 989 F.2d at 871 (quoting *Glynn*, 470 F.2d 95, 98).

*Jones v. Perry*, No. 3:16-cv-02631, 2020 WL 2933277, at *2–3 (M.D. Tenn. June 3, 2020), *appeal dismissed*, No. 20-5643, 2020 WL 7385249 (6th Cir. Oct. 21, 2020).

In reference to a state inmate's burden in seeking bail pending review of his federal habeas petition, the U.S. Court of Appeals for the Sixth Circuit has observed that "[i]t will be the rare occasion when an inmate will be able to satisfy this standard." *Pouncy v. Palmer*, 993 F.3d 461, 463 (6th Cir. 2021). Without question, the motion before this Court does not present such rare occasion for an award of bail and release to home confinement pending the outcome of Petitioner's habeas case. The Court at this point has merely identified one colorable claim asserted in the Amended Petition, the claim of ineffective assistance of trial counsel. (*See* Doc. No. 8 at 1.) Even accepting that a substantial question of law is presented by Petitioner's claim that his guilty plea was leveraged by threats against his wife and brother, Petitioner has merely presented a claim that his plea was not voluntary. In asserting this common habeas claim, he has not shown any "circumstance making [his motion for bail] exceptional and deserving of special treatment in the interests of justice." *Dotson*, 900 F.2d at 79 (citation and internal quotation marks omitted).

Finally, in considering any request for release on bond, the Court properly "takes into consideration Petitioner's prior conduct with respect to bond." *Jones*, 2020 WL 2933277, at *4. A state court order attached to the Amended Petition reflects that Petitioner violated the conditions of a 2019 sentence to supervised release on Community Corrections, when he refused law enforcement's request for entry into his residence, left the state without permission, and incurred

7

other criminal charges. (Doc. No. 7 at 16.) Given this history, Petitioner's request for conditional release during the pendency of this case is not well taken.

## III. CONCLUSION

This habeas case will proceed on the usual track, without any hearing on Petitioner's Motion for a Temporary Restraining Order and a Preliminary Injunction (Doc. No. 9). That Motion, whether construed as seeking a TRO, preliminary injunction, or release on bond, is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE