IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM G. CREASY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 3:22-cv-00035 |
| | ) | |
| MARTIN FRINK, Warden,[1] | ) | JUDGE RICHARDSON |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

William Creasy, an inmate at the Trousdale Turner Correctional Complex (TTCC) in Hartsville, Tennessee, filed an amended pro se habeas corpus petition under 28 U.S.C. § 2254. (Doc. No. 7.)

The State responded by filing a Motion to Dismiss the Amended Petition based on the statute of limitations and Petitioner's failure to exhaust state remedies (Doc. No. 14), along with a supporting Memorandum (Doc. No. 15) and a Notice of Filing the record of state court proceedings. (Doc. No. 12.) Petitioner filed a response to the Motion to Dismiss (Doc. No. 17), along with additional motions unrelated to the procedural defenses asserted by Respondent.

The Motion to Dismiss is now before the Court. Though Petitioner requests an evidentiary hearing (Doc. No. 18), the record before the Court demonstrates that an evidentiary hearing is not needed to resolve the Motion to Dismiss. *See Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011)

---

[1] Repeating a misspelling of Respondent's name reflected in Petitioner's pro se filings, the Court's prior orders identified Respondent as "Warden Martin Fink." As indicated in counsel's filings (*e.g.*, Doc. No. 12), Respondent's last name is in fact "Frink," not "Fink."

(quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)) (evidentiary hearing not required "if the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief"); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (same). As explained below, this action is untimely and will be dismissed on that basis. Because reasonable jurists could not disagree with this disposition, Respondent's exhaustion defense need not be considered.

## II. BACKGROUND

Petitioner challenges the constitutionality of his February 13, 2020 conviction and sentence in Sumner County Criminal Court for two crimes to which he pled guilty. (Doc. No. 7 at 1.) For those crimes (theft over $10,000 and evading arrest), Petitioner was sentenced to 15 years at 60% and 12 years at 60%, respectively, in the Tennessee Department of Correction (TDOC), to run concurrently with prior sentences. (*Id.*; *see also* Doc. No. 12-1 at 30–33.) Petitioner did not seek to withdraw his guilty plea, nor did he appeal his conviction in state court.

From June 2020 to July 2021, Petitioner submitted a variety of pro se letters and motions to the trial court related to the outcome of his case (seeking, for example, additional discovery, sentence alteration and "early release," "acceptance into mental health court," and relief based on vindictive prosecution), none of which were successful. (Doc. No. 12-1 at 34–39, 43–92.) Amid his other state court filings, on April 12, 2021, Petitioner filed a state post-conviction petition that was summarily dismissed based on the statute of limitations. (Doc. No. 7 at 16–17.)

In July 2021, Petitioner attempted to institute proceedings in this Court related to his Sumner County case but ultimately withdrew his filing in November 2021 without payment of the filing fee, so that he could return to state court. *See Creasy v. Sumner Cnty. Crim. Ct.*, No. 3:21-cv-00536 (M.D. Tenn. Nov. 30, 2021) (Richardson, J.). On November 22, 2021, Petitioner filed a motion for sentence review in the Tennessee Supreme Court. (Doc. No. 12-2.) In an order entered

2

two days later, the Tennessee Supreme Court denied review for lack of appellate jurisdiction, "[b]ecause no post-conviction challenge was litigated in the lower courts." (Doc. No. 12-3.)

Petitioner then returned to federal court, seeking relief under Section 2254. Under the prison mailbox rule, his original Petition is deemed filed on December 21, 2021, the date he handed it over to prison authorities for mailing. (Doc. No. 1 at 7); *see* Rule 3(d), Rules Gov'g § 2254 Cases; *Pratt v. Kowalski*, No. 19-1142, 2019 WL 7938069, at *3 (6th Cir. Nov. 13, 2019) (stating that "a habeas petition is deemed filed on the date that it is handed to prison authorities for mailing") (citations omitted). In his Amended Petition (Doc. No. 7), Petitioner attacks his conviction based on, *inter alia*, the alleged denial of pre-plea discovery and the claim that his guilty plea was coerced by the State's threat to prosecute his wife and brother if he did not plead guilty. (Doc. No. 7 at 5.)

### III. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214 (1996), contains a statute of limitations for state prisoners seeking federal habeas corpus relief, establishing a one-year limitations period[2] that "run[s] from the latest of":

---

[2] What the undersigned wrote years ago still holds true and applies herein:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another.[fn deleted] For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. . . .
>
> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997). When speaking in his own voice herein, the undersigned will adhere to this terminology, although the cases he quotes herein do not always do likewise.

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *see Holland v. Florida*, 560 U.S. 631, 635 (2010).

Here, as in the majority of cases, the limitations period began to run when the judgment of conviction became final, pursuant to Section 2244(d)(1)(A). Petitioner did not attempt to withdraw his February 13, 2020 guilty plea or otherwise challenge the judgment of conviction entered on that date. Therefore, the judgment against him became final thirty days later, on March 13, 2020. *See State v. Green*, 106 S. W. 3d 646, 650 (Tenn. 2003) (finding that, in Tennessee, "a judgment of conviction upon a guilty plea becomes a final judgment thirty days after entry," allowing that time for a defendant who waives his right to appeal to file a motion to withdraw the previously entered plea). The running of the limitations period is counted from the following day, March 14, 2020. *See* Fed. R. Civ. P. 6(a)(1)(A) (when computing a time period "stated in days or a longer unit of time . . . exclude the day of the event that triggers the period"); *Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000) (applying Rule 6(a)'s standards for computing periods of time to habeas filing). Therefore, unless the limitations period was tolled or the statutory clock was reset, Petitioner's time for filing a federal habeas petition expired on March 15, 2021,[3] some nine months prior to this action's filing.

---

[3] Because the last day of the limitations period, March 14, 2021, fell on a Sunday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward" the limitations period. Petitioner's various pro se motions in the trial court following his incarceration were not treated by the state courts as applications for post-conviction or other collateral review. (*See* Doc. No. 12-3 (Tennessee Supreme Court order stating that "no postconviction challenge was litigated in the lower courts").) Though Petitioner eventually did file a post-conviction petition in state court on April 12, 2021, that petition was dismissed as untimely. (*See* Doc. No. 7 at 16–17.) Only "properly filed" applications "for post-conviction or other collateral review" toll the running of AEDPA's limitations period. 28 U.S.C. § 2244(d)(2); *Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings—including any state-imposed time limits. A state postconviction motion that a court cannot consider because the petitioner failed to include a timely claim is not 'properly filed,' for purposes of AEDPA's statutory tolling provision." *Davis*, 900 F.3d at 323–24 (quoting, *e.g.*, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)) (internal citations omitted). Petitioner therefore cannot benefit from statutory tolling under Section 2244(d)(2).

In addition to tolling under the statute, AEDPA's limitations period may be subject to equitable tolling in appropriate cases. *Holland*, 560 U.S. at 645–49. However, the doctrine of equitable tolling is used sparingly and is typically applied "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000)). It is Petitioner's burden to show that he is entitled to equitable tolling, *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010), a

burden he may carry by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649; *see also Stiltner v. Hart*, 657 F. App'x 513, 520 (6th Cir. 2016).

Petitioner argues that he was prevented from pursuing post-conviction remedies on time because he was sent to state prison on March 16, 2020 and was immediately placed on extended lockdown due to COVID-19, which severely limited his access to the prison law library. (Doc. No. 17 at 1–2.) He further states that he did not know "what post conviction really was" until February 2021, and that he began preparing his post-conviction filing soon after learning of this remedy. (*Id.* at 1.) But "ignorance of the law, including on matters such as the availability of state post-conviction remedies and the related statute of limitations, does not entitle [the petitioner] to equitable tolling." *Carter v. Phillips*, No. 20-6038, 2021 WL 867105, at *2 (6th Cir. Mar. 4, 2021), *cert. denied*, 142 S. Ct. 242 (2021). Neither does lack of access to the prison law library or other legal materials, *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011), especially where, as here, Petitioner was able to make a number of state court filings during the limitations period despite such lack of access. *See Faught v. Vantell*, No. 3:21-CV-321-TAV-DCP, 2022 WL 4137825, at *6 (E.D. Tenn. Sept. 12, 2022) (finding that lack of access to prison law library during limitations period was not grounds for equitable tolling where petitioner was able to file "multiple subsidiary motions to the [state court]" during that time). Again, despite alleging that his February 2020 guilty plea was leveraged by threats that might have initially deterred him from objecting to his sentence, and despite being locked down and denied library access upon arriving at state prison (Doc. No. 17 at 1–2), Petitioner managed to file a number of motions and letters objecting to his prison sentence in state court between June 2020 and the expiration of the AEDPA limitations period in March 2021. (*See* Doc. No. 12-1 at 34–39, 43–92.) He could have filed for collateral

review of his conviction during that time but did not. Accordingly, equitable tolling of the limitations period is not warranted.

Finally, Petitioner does not raise "a convincing claim of actual innocence" of the charges of conviction, such that the court could reach the merits of his Petition despite its untimeliness. *McQuiggin v. Perkins*, 569 U.S. 383, 392–98 (2013) (allowing that actual innocence can operate in rare cases as an "equitable exception to § 2244(d)(1)," rather than grounds for tolling, in order to allow petitioner "to overcome expiration of the statute of limitations governing a first federal habeas petition"). Petitioner merely asserts that "they have no evidence of anything [he's] convicted of." (Doc. No. 19 at 2.) "This is not the "convincing claim" envisioned in *McQuiggin*, which requires a "credible showing" of "new evidence" of innocence to reach the merits of an untimely habeas petition. 569 U.S. at 392, 394–95 ("The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner.") (citation and internal quotation marks omitted); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.")[4]. Further review of this time-barred Petition is thus unavailable.

---

[4] What the undersigned wrote in a prior opinion is applicable here:

> The actual innocence exception is exceedingly narrow in scope, as it concerns a petitioner's *actual* innocence rather that his *legal* innocence. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). "[A]ctual innocence means factual innocence, not mere legal innocence." *Bousely v. United States*, 523 U.S. 614, 623 (1998). The distinction here is between the defendant not *actually* having committed the crime as defined by all of its elements (*i.e.*, not all acts necessary to committing the crime having actually occurred, and/or not all circumstances necessary to make these acts a crime having actually existed) and the defendant not having been *proven* in all respects to have committed the crime (*i.e.*, the Government not having established the occurrence of all acts necessary to committing the crime and all circumstances necessary to make those acts a crime). Petitioner cannot successfully raise a claim of actual innocence because his argument that the evidence was insufficient to prove he [committed the crimes of conviction.

7

# IV. CONCLUSION

For the reasons stated above, Respondent's Motion to Dismiss (Doc. No. 14) is **GRANTED** and all other pending motions are **DENIED** as moot. In view of its untimely filing, this action is **DISMISSED**.

Because this constitutes a "final order adverse to" Petitioner, the Court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a habeas petition is "denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Because reasonable jurists could not find it debatable that the Court is correct in its procedural ruling under the circumstances presented here, the Court **DENIES** a certificate of appealability in this case. Petitioner may, however, seek a certificate of appealability directly from the Sixth Circuit Court of Appeals. Fed. R. App. P. 22(b)(1).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

---

*Robinson v. United States*, No. 3:19-CV-00514, 2022 WL 4487975, at *11 (M.D. Tenn. Sept. 27, 2022) (Richardson, J.).

IT IS SO ORDERED.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE